### UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693
BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**JULY 28, 2014**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

July 28, 2014

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Richard DeVita, Esq.                         Mary Ann McField, Esq.
1228 Garden Street                           1209 E. Grand Street, Suite 201
Hoboken, New Jersey 07030                    Elizabeth, New Jersey 07201
*Counsel for Plaintiffs*                     *Counsel for Defendants/Debtors*

Re:  **Milenkovic v. Gonzalez**
     **Adv. Pro. No. 11-01672 (DHS)**

Dear Counsel:

     The plaintiffs, Kanami and Aleksander Milenkovic ("Plaintiffs"), have filed an adversary complaint (the "Complaint") against the defendants/debtors, Edgardo and Ana Gonzalez ("Defendants" or "Debtors"), seeking to determine the non-dischargeability of a debt pursuant to 11 U.S.C. § 523(a) based on a pre-petition default judgment entered in the Superior Court of New Jersey against the Defendants for damages of $80,402.01. The judgment arises from a relationship wherein Plaintiffs hired Edgardo Gonzalez to perform repairs and renovations on their residence.

Page 2
July 28, 2014

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012. This matter is a proceeding to determine the non-dischargeability of a particular debt and therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409 (2007). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS

The Plaintiffs purchased their two-family home in Jersey City, New Jersey in 2007 and hired the Debtor, Edgardo Gonzalez, to perform certain repairs and renovations on their residence based on representations by Edgardo and his wife, Ana, regarding his expertise. Plaintiffs paid Edgardo the total sum of $33,700 in cash, and although they requested a written contract, never received an executed contract from him. The work was commenced but not completed and the Plaintiffs were forced to hire another contractor to complete the project at an additional cost of $20,730.67.

Plaintiffs initiated suit in the Superior Court of New Jersey against the Defendants alleging breach of contract, damages, false representation, fraud, and consumer fraud. The Defendants did not file an answer. Default judgment was entered on February 11, 2009 and a proof hearing held shortly thereafter, with a final judgment dated May 15, 2009. Plaintiffs were awarded compensatory damages of $21,700.67, trebled to $65,102.01 under the New Jersey Consumer Fraud Act, in addition to costs of $300, and attorney fees of $15,000, for a total of $80,402.21 ("Judgment"). The Defendants pro se filed a motion to vacate the Judgment and oral argument was heard. Defendant Edgardo testified at that hearing but the State Court found no evidence of excusable neglect or meritorious defense and denied the motion. A second motion was filed by Defendants through an attorney they hired and again the motion was denied.

Plaintiffs filed the within Complaint and a motion for summary judgment in this Court asserting this matter was adjudicated and the underlying complaint and Judgment should be granted full faith and credit and given collateral estoppel effect, preventing the Debtors from denying the claims and damages set forth in the state court Judgment. This Court denied the Plaintiffs' motion for summary judgment on the grounds that jurisdiction for a determination of non-dischargeability lies with the bankruptcy court and that a pre-petition state court judgment does not have res judicata effect on nondischargeability. *Milenkovic v. Gonzalez*, ADV 11-01672 DHS, 2012 WL 2064535 (Bankr. D.N.J. June 7, 2012).

At trial, Mr. Milenkovic testified that in 2007, he was introduced to the Debtor by his realtor, Marietta Pineda. Before the Plaintiffs hired him, the Debtor drove the Plaintiffs to three large properties in Newark that he completed "from the ground up." Mr. Milenkovic testified

Page 3
July 28, 2014

that in July 2007, he hired the Debtor as a general contractor to complete renovation work on the Plaintiffs' home.  Plaintiffs hired the Debtor to finish their second floor electrical and plumbing work, replace the roof, install kitchen cabinets and a wood floor, change the brick face surrounding the windows, and perform additional exterior renovations.  Ms. Milenkovic testified that Debtor promised the second floor work would be completed in one month at a cost of $10,000.

Ms. Milenkovic further testified that the Debtor stated he had insurance, could do inspections, and did an inspection of the Plaintiffs' home when it was being purchased.  Ms. Milenkovic drafted and presented the Debtor with a written contract which he refused to sign. (Ex. P-2 in Evidence).  Ms. Milenkovic testified that the Debtor never presented her with permits for the plumbing, electrical, or restoration work, and that he only obtained a permit for the exterior renovations.  When she requested to see the Debtor's license, he showed her a license issued by the State of New Jersey Division of Consumer Affairs, which registered an Armando Gomez for practice in New Jersey as a home improvement contractor.  (Ex. P-3 in Evidence).

Ms. Milenkovic testified that she was present during the construction and that the Debtor did not perform any work other than directing the subcontractors. Mr. Milenkovic could not recall the Debtor physically completing any of the renovations on the home, and said he hired subcontractors to complete all the projects.  Ms. Pineda, who had paid the Debtor to complete a paint job at her apartment, also testified that while she hired and paid the Debtor, he subcontracted the paint job to other workers.  Although Mr. Milenkovic customarily paid the Debtor for all the renovation work, the brick professional demanded direct payment from Mr. Milenkovic when he did not receive payment from the Debtor.

The Plaintiffs testified that the Debtor and his subcontractors worked on their home off and on for nearly two years.  The Debtor requested cash payments from the Plaintiffs, stating he didn't want to take a check.  The one time he took a check, he wanted it made out to his wife. Debtor never provided them with a proposal to finish or receipts for the cash they paid him.  Ms. Milenkovic testified that a substantial amount of the Debtor's work was either improper or incomplete, and as a result the Plaintiffs had to hire another contractor at a replacement cost of $20,730.67 (Ex. P-6 in Evidence).  She also asserts that the Debtor damaged or lost miscellaneous items on her property in the amount of $970.  On cross examination, Ms. Milenkovic acknowledged that she had never paid the Debtor for installing exterior molding.

The Debtor testified that he was hired as a handyman by the Plaintiffs to make various repairs and renovations to their home and was not a general contractor. He testified that he received approximately $18,000 from the Plaintiffs to make repairs over a period of eighteen months.  The Debtor denied that he received $33,000 from the Plaintiffs.  The Debtor testified that the Plaintiffs never complained about his work, and emphasized that they paid him over an eighteen-month period for each work project completed. The Debtor testified that the Plaintiff never complained to him about any of the damaged items on her property.

Page 4
July 28, 2014

The Debtor also testified that he has never met or heard of a man by the name of Armando Gomez. However, an exhibit attached to Plaintiffs' state court complaint against the Debtor illustrates that the Debtor's daughter-in-law, Shirley Gonzalez, applied for a permit in October 2007 under the name "Armando Gomez" for a brick exterior project that the Debtor was working on at that time.

On cross-examination, the Debtor acknowledged that he had not obtained permits for the work performed, did not have a general contractor license, claiming he was only a handyman, and did not have insurance as represented to Plaintiffs.

Both Plaintiffs affirmatively testified that Ana Gonzalez did not hold herself out as a contractor at any time, that she never worked with her husband, and that she had little or nothing to do with the construction or the underlying cause of action. Following presentation of the Plaintiffs' case, this Court dismissed the Complaint as to Debtor Ana Gonzalez.

.I.  **Dischargeability**

The Plaintiffs assert that certain actions of the Debtor Edgardo, which amount to violations of the New Jersey Consumer Fraud Act ("CFA") such as his failure to maintain current insurance, failure to register with the State, and failure to provide Plaintiffs with a written contract, indicate the Debtor violated the dischargeability statute. However, because regulatory violations of the CFA do not require proof of intent, evidence of a CFA violation does not per se make a debt non-dischargeable. *See Allen v. V & A Bros., Inc.*, 208 N.J. 114, 133 (2011) ("[F]or CFA purposes, regulatory violations are analyzed in terms of strict liability."). Thus, the Court must analyze Plaintiffs' claims under the non-dischargeability statute. The violations of the CFA have already been determined by the state court and the entry of the Judgment.

    A.  11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides that an individual Debtor may not obtain discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523. The Third Circuit has stated that Section 523(a)(2)(A) requires proof of actual fraud which consists of the following elements:

> (1) [the debtor] obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiffs reasonably relied on the representation; and (5) the

Page 5
July 28, 2014

> Plaintiffs suffered loss, which was proximately caused by the Debtor's conduct.

*In re Cohen*, 185 B.R. 180, 182 (Bankr. D.N.J. 1995) *aff'd,* 191 B.R. 599 (D.N.J. 1996).

In this case, the Debtor obtained payment from the Plaintiffs through his material misrepresentation that he was a licensed and insured home improvement contractor. Both Plaintiffs testified that the Debtor drove them to Newark to showcase three properties that he had completed "from the ground up"—a fact that the Debtor knew was false at the time he made the representation.

Additionally, when the Plaintiffs requested proof of the Debtor's home improvement contractor license, he supplied them with a false document in another man's name. The trial testimony makes clear that the Debtor made these misrepresentations with the intent to deceive the Plaintiffs and secure their business. The Plaintiffs reasonably relied on the Debtor's representation, as the Debtor was recommended to them by their realtor and they had no reason not to believe him. The Debtor held himself out as a home improvement contractor and repeatedly reassured Plaintiffs of his expertise. Finally, the Plaintiffs suffered damages as a result of the Debtor's failure to properly and timely complete the jobs he was hired to complete. It is clear that Plaintiffs would not have hired the Debtor had they been aware he was materially misrepresenting his skills and credentials. Thus, the Plaintiffs' claim pursuant to Section 523(a)(2)(A) is granted.

### B.    11 U.S.C. § 523(a)(4)

Pursuant to 11 U.S.C. §523(a)(4), a debt is excepted from discharge if it is incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The common definition of "fiduciary," which suggests a relationship of "confidence, trust and good faith, is too broad for the purposes of bankruptcy law." *In re Kaczynski*, 188 B.R. 770, 773 (Bankr. D.N.J. 1995). The meaning of "fiduciary" for purposes of Section 523(a)(4) is limited to relationships involving express or technical trusts. *Id.*

Three elements must be satisfied in order to o establish an express trust: (1) a declaration of trust; (2) a clearly defined trust res; and (3) an intent to create a trust relationship. *Id.* at 774. "[O]ne of the necessary elements under section 523(a)(4) is that the money or property on which the debt is based must have been entrusted to the debtor-fiduciary." In re Librandi, 183 B.R. 379, 385 (M.D. Pa. 1995) (internal citation omitted). Several courts have determined that technical trusts for purposes of § 523(a)(4) can be created by state statutes. *In re Kaczynski*, 188 B.R. at 774 (citing *In re Johnson,* 174 B.R. 537, 541 (Bankr.W.D.Mo.1994) ("[a]n express or technical trust must be either one in which a formal document is executed which establishes the rights and duties of the parties, or one in which trust-type obligations are imposed pursuant to statute or common law.")).

Page 6
July 28, 2014

Merely contractual relationships are less than what is required to establish the existence of a fiduciary relationship. *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993); *see also In re Glatt*, 315 B.R. 501, 510 (Bankr. D.N.D. 2004) (holding the relationship between the debtor and creditor was not fiduciary as it was merely contractual).

Here, the Plaintiffs possessed a contractual relationship with the Debtor. They did not entrust the Debtor with any funds, and no trust-type obligations were imposed. Moreover, Plaintiffs have failed to assert any state statute under which a fiduciary relationship would arise. Thus, the Plaintiffs' 11 U.S.C. § 523(a)(4) claim is denied, as the relationship between the parties does not fall within the definition of a fiduciary relationship as required for purposes of the Bankruptcy Code.

### C.    11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides for nondischargeability of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). The Supreme Court of the United States has held that the injury itself must be intentional or deliberate. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998); *see also Conte v. Gautam (In re Conte)*, 33 F.3d 303, 304 (3d Cir. 1994) (An injury is willful and malicious within the meaning of §523(a)(6) if "the actor purposefully inflicted the injury or acted with substantial certainty that injury would result"); *Buchanan v. Scott (In re Scott)*, 227 B.R. 918, 922 (Bankr. S.D. Fla. 1988) (holding that "willful" requires proof of a deliberate act intended to cause injury).

Here, the evidence is insufficient to show that the Debtor purposefully inflicted the injury or acted with substantial certainty that injury would result. The Debtor's material misrepresentations and the damages which flowed therefrom do not rise to the level of a willful and malicious injury as contemplated by the Bankruptcy Code. Therefore, the Plaintiffs' 11 U.S.C. § 523(a)(6) claim is denied.

## II.    Damages

Plaintiffs allege they have suffered $21,700.67 in damages as a result of the Debtor's material misrepresentations. (Ex. P-6 in Evidence). Because of the Debtor's failure to properly complete the renovation work on Plaintiff's home, Plaintiffs were forced to hire other contractors to either fix or complete Debtor's work at an additional expense of $20,730.67. Ms. Milenkovic testified that the compensatory damages are made up of funds provided to finish work not completed or improperly completed by the Debtor as follows: (i) $7,446.17 for a masonry project; (ii) $2,900 for iron fence work; (iii) $264.50 to remove and reinstall the kitchen stove; (iv) $150 for replacement of faucet and exterior wiring; (v) $500 for finishing hallway painting; (vi) $800 to remove trash left by the Debtor; and (vii) $6,020 to repair the roof, basement, heater, and the electrical work in the kitchen.

Page 7
July 28, 2014

    Plaintiffs also seek monetary compensation in the amount of $970 for miscellaneous items that the Debtor either lost or destroyed. While Ms. Milenkovic could not supply the Court with receipts or further evidence of the damaged property, it was allowed in the State Court judgment and will remain.

### III.    Conclusion

    For the above reasons, this Court finds that the Debtor Edgardo Gonzalez's discharge should be denied under Section 523(a)(2)(A) of the Bankruptcy Code. The judgment of $80,402.21 entered pre-petition in the State Court, representing treble damages under the New Jersey Consumer Fraud Act plus costs and attorney fees, shall not be discharged in Mr. Gonzalez's bankruptcy proceeding and remains a debt payable by him.

    An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

                                      Very truly yours,

                                      *s/ Donald H. Steckroth*

                                    DONALD H. STECKROTH
                                    UNITED STATES BANKRUPTCY JUDGE

Enclosure